People should have been required to call him as a witness, and not whether they must have disclosed the identity of, or produced, a confidential informant. On this record, we cannot say that the prosecutrix abused her discretion in declining to do so (*People v Buckler*, 39 NY2d 895, 897; *People v Stridiron*, 33 NY2d 287, 292; cf. *People v Andre W.*, 44 NY2d 179) and it was not error for the court to decline to compel the People to do so. Defendant's contention that the court erred in failing to instruct the jury on renunciation and duress is also meritless. To warrant a charge on renunciation, it must be established by defendant that he withdrew from participation in the offense prior to the commission thereof and made a substantial effort to prevent its commission (Penal Law, § 40.10, subd 1; see *People v Ozarowski*, 38 NY2d 481, 492). There is no evidence in this record which would support a theory of renunciation. Prior to the alleged renunciation, defendant accepted a $1,000 payment from Kuzon, which itself was one of the overt acts charged constituting the conspiracy. He did not thereafter attempt to prevent the commission of the conspiratorial plan since he and Shouman subsequently went to the carpet store to inspect it, and at one additional meeting between defendant, Shouman, Kuzon and another officer, the plans for the arson were finalized. Inasmuch as defendant neither withdrew from participation in the offense nor made an effort to prevent the commission of the crime, the court correctly refused the requested charge. Nor was the failure to charge duress error. The affirmative defense of duress requires a showing that "the defendant engaged in the proscribed conduct because he was coerced to do so by the use or threatened imminent use of unlawful physical force upon him * * * which force or threatened force a person of reasonable firmness in his situation would have been unable to resist" (Penal Law, § 40.00, subd 1). Here, the alleged coercive situation also occurred subsequent to the defendant's taking of the $1,000 from Kuzon. As a matter of law, this overt act was clearly the product of defendant's free will, and not of duress. Furthermore, there was no evidence presented that any physical force or immediate threat of physical force was inflicted on defendant. The duress defense may not be used when the threat of force is not capable of immediate exercise or realization (see *People v Brown*, 68 AD2d 503, 513). Finally, some comment on the use of the words "torch" and "torch job" by the prosecutrix during trial and summation is in order. The court had earlier ruled that, while these words appeared in the taped conversations, no other such references should be made during the trial due to their prejudicial effect on the jury. Although any further use of these words was improper, the references by the prosecutrix and her witnesses were infrequent, prompt objections thereto were sustained, and curative instructions were given. Under the circumstances, it cannot be said that defendant was deprived of a fair trial, and in view of the overwhelming evidence of defendant's guilt, any error in this respect was harmless (see *People v Galloway*, 54 NY2d 396; *People v Arce*, 42 NY2d 179; cf. *People v Bailey*, 58 NY2d 272). Mollen, P. J., Titone, Bracken and Brown, JJ., concur.

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v J. D. LIBERATORE, Respondent. — Motion by appellant, the People of the State of New York, for reargument of this court's order, dated November 29, 1982 [90 AD2d 1003], which affirmed an order of the Supreme Court, Queens County (Rubin, J.), dated October 27, 1981, granting the defendant's motion to dismiss the indictment on the ground of unconstitutional preindictment delay. Motion granted and upon reargument we adhere to our original determination. The People have moved to reargue the above-named appeal, claiming that the decision therein is inconsistent with our decision in *People v Bonsauger* (91 AD2d 1001). Both appeals arose out of a city-wide investigation of the bribery

of inspectors for the department of consumer affairs and involved similar periods of preindictment delay. In *Bonsauger* we reversed Criminal Term's finding of an unconstitutional preindictment delay and reinstated the indictment. In *Liberatore,* however, we affirmed the dismissal. Upon reconsideration of our decision in *Liberatore,* we conclude that the decisions are not inconsistent. The cases are factually distinguishable, most notably in the degree of prejudice suffered by the defendant in *Liberatore.* In *Bonsauger,* we noted that the defendant's inability to recall the events on the date of the alleged bribe was mitigated by the presence of an audible tape recording of the entire transaction (see *People v Bonsauger, supra*). In this case, however, it is conceded by the People that the tape recording of the alleged bribery incident is inaudible, and therefore is unavailable to refresh the defendant's recollection. The prejudice thus generated distinguishes this case from *People v Bonsauger* (*supra*) and, when combined with a consideration of the nature of the offense and the quantum of the preindictment delay, serves to render the dismissal of the indictment in this case appropriate (see *People v Taranovich,* 37 NY2d 442; *People v Vasquez,* 79 AD2d 621; *People v Bryant,* 65 AD2d 333). Gulotta, J. P., Weinstein, Niehoff and Rubin, JJ., concur.

### (September 12, 1983)

█ CARMELLA ARANZULLO et al., Appellants, v JAMES J. SEIDELL, Respondent. — In a negligence action to recover damages for personal injuries, etc., plaintiffs appeal from a judgment of the Supreme Court, Orange County (Isseks, J.), dated November 20, 1981, which is in favor of defendant, upon a jury verdict, after a trial on the issue of liability only. Judgment reversed, on the law and as a matter of discretion, and new trial granted, with costs to abide the event. This negligence action arose out of an automobile accident on Route 94, a two-lane highway in the Town of Cornwall. On January 13, 1979, at approximately 3:00 P.M., plaintiff John Aranzullo's vehicle was proceeding west and defendant's vehicle was traveling east on Route 94. The roadway was slippery from freezing rain. As defendant drove his automobile over the crest of a hill and around a curve, his vehicle skidded on slush into the westbound lane and collided with plaintiff John Aranzullo's vehicle. At a trial on the issue of liability only, the jury returned a verdict in favor of defendant. We are of the opinion that errors in the court's charge warrant reversal of the judgment and a new trial. The jury was instructed to consider section 1180 of the Vehicle and Traffic Law as it pertains to reducing speed when one approaches a curve or hill crest or a hazard created by weather and section 1120 of said statute which provides that a vehicle shall be driven upon the right side of the roadway. The jury was further advised, pursuant to the New York Pattern Jury Instructions (PJI 2:26), that if a violation of the statutes was found, it constituted negligence, since a standard of care other than that set forth in the statute may not be substituted. Defendant excepted to the charge as deficient on the ground that section 1120 of the Vehicle and Traffic Law does not impose absolute liability for its violation. Defendant contended that a violation of the statute did not constitute negligence where the evidence showed that the defendant had exercised reasonable care in an effort to comply and urged that the jury should be instructed that it is the unexplained failure to comply which is negligence. In an attempt to remedy the objectionable aspect of its charge, the trial court gave the following supplemental instruction, this time over plaintiffs' objection: "I read the statute to you, the Vehicle and Traffic Law statute,